AUGUST B. PALM, RESPONDENT, *v.* JOHN WATT AND OTHERS, APPELLANTS.

*Bank check — forged indorsement — Estoppel.*

R., while living in Texas, assumed the name of G., a former acquaintance, and under that name received a letter addressed to G., containing a check drawn by the defendants to the order of G.; R. forged the indorsement of G., and received the amount of the check from W., who indorsed it to the plaintiff. Before the presentation of the check the fraud was discovered, and the defendants stopped payment of the check. Both W. and the plaintiff had received the check in good faith, and for value.

*Held,* that the defendants were not liable upon the check; first, because the plaintiff acquired no title through the forgery; second, because the defendants remained liable upon the check to the real payee.

*Held,* also, that the fact that R. had a short time before obtained by the same criminal process a check of fifty dollars upon which he had forged the indorsement and obtained the money therefor from W., and that such check on reaching New York had been paid, did not alter the case because no knowledge of the fraud or forgery in the first check and its negotiation, had been brought home to the defendants or the relatives of G. before sending the check in suit, and because the act of payment by the drawees of the first check, upon a forged indorsement, which may have influenced W. in relying upon the subsequent indorsement, was not the act of the defendants, and did not estop them or G. from asserting the forgery, upon which the money on that check had been obtained from the drawers.

APPEAL by defendant from a judgment entered in favor of the plaintiff, upon the report of a referee in an action against the drawer of a check.

*Ten Broeck & Van Orden,* for the appellants.

*J. T. Williams,* for the respondent.

DAVIS, P. J.:

In 1867, one James Raleigh was temporarily staying at San Saba, Texas, under the assumed name of John M. Gillespie. By that assumed name he wrote letters to the relatives of John M. Gillespie, at Carbondale, Pa., representing himself to be the person of that name who had been absent from home and unheard of for several years, and asking for assistance to enable him to

return home. Raleigh had known the real Gillespie in New Mexico, and had learned from him such particulars respecting his family as enabled him to deceive them into the belief that he was the absent John M. Gillespie. Induced by the fraudulent statements in Raleigh's letter, the mother of John M. Gillespie purchased of the defendants a check of $200, drawn by them on Howes & Macy, bankers in the city of New York, payable to the order of John M. Gillespie, and caused the same to be sent by mail, addressed to John M. Gillespie, San Saba, Texas. The letter thus addressed inclosing the check, was taken from the post-office by R., who indorsed the check by the name of John M. Gillespie, and delivered it to one Thomas W. Ward, who paid R. the full amount of the check. Ward indorsed it to the plaintiff who paid him the full amount thereof, and forwarded it to New York for payment. In the mean time, and before the presentation of the check, the real John M. Gillespie was heard from by letter from Council Grove, Kansas, where he resided, and the defendants stopped payment of the check. On its presentation payment was refused. Ward received the check from R. in good faith, believing his name to be John M. Gillespie. By the same fraudulent means R. had previously obtained a check for fifty dollars on a like fraudulent letter, which was forwarded to him in the same way, and upon which he had forged the name of John M. Gillespie, and which was sent forward to New York, presented and paid by Howes & Macy. This occurred, however, before the defendants or relatives of Gillespie at Carbondale had any reason to suspect that a fraud was being practiced upon them, and before they had heard from John M. Gillespie, then in Kansas. Upon this state of facts the learned referee held that the defendants were estopped from asserting the fraud and forgery practiced by R., as a defense to the check in the hands of a *bona fide* purchaser for value. We think the learned referee improperly applied the doctrine of estoppel. The criminal fraud of R. induced the defendants to send their check, not to him, but to John M. Gillespie, to whom it was made payable. There was no delivery nor intention to deliver the check to R., and no authority conferred upon him to take the letter inclosing it from the post-office, or to make any disposition of the check. His act in receiving

and opening the letter was in itself a criminal offense, and when he had, by the crime of false personation, obtained possession of the check, he acquired no authority to dispose of or indorse it. His act in indorsing it was a palpable forgery, for which upon the facts disclosed he could, without doubt, have been convicted of that crime. The defendants were guilty of no negligence which led to R.'s possession of the property. They did not deliver, nor intend to deliver it to him. They are not found to have been guilty of any negligence in forwarding the check to him under the circumstances disclosed in the case, nor does the case show any want of prudence, under the circumstances, either on the part of the defendants or the relatives of John M. Gillespie. It is simply a case where, by a criminal fraud, committed by a stranger, the defendants were induced to send by letter to John M. Gillespie, addressed to him, a check payable to his order; and the guilty person who thus induced them to do that act got possession of the check by another crime, and then committed forgery by indorsing it. That person committed a fraud also upon Ward, to whom he indorsed the paper, but the defendants are not chargeable with the consequences of that fraud. It is urged that the possession of the letter which inclosed the check, and which was addressed and written to John M. Gillespie, enabled R. the more easily to personate Gillespie, and thus deceive Ward. This is no more true than it would be in the case of any thief who had stolen a letter addressed to a third party, inclosing a check to the order of such party, and who brought the check to a bank with such stolen letter as the evidence of his identity. In such a case, very clearly, the bank paying the check to the forger would be responsible for the genuineness of the indorsement, and any intermediate buyer occupies the same position. The fact that R. had a short time before obtained by the same criminal process a check of fifty dollars, upon which he had forged the indorsement and obtained the money therefor from Ward, and that the check on reaching New York had been paid, does not seem to us to alter the case, because no knowledge of the fraud or forgery in the first check and its negotiation is brought home to the defendants or to the relatives of Gillespie before sending the check, and because the act of payment by the drawers of the first check upon a forged indorsement, which

may have influenced Ward in relying upon the subsequent indorse-
ment, was not the act of the defendants, and was not even an
estoppel upon them or upon Gillespie in asserting the forgery upon
which the money on that check had been obtained from the
drawers.

We think the defendants were at liberty to assert the defense,
for two reasons: *first*, because the plaintiff acquired no title to the
check through the forgery; and *second*, because the defendants
remained responsible upon the check to the payee, the real John
M. Gillespie, who had lost no title to it by the fraud or forgery
of R.

We think the judgment was erroneous, and should be reversed
and new trial granted, costs to abide the event.

Present — DAVIS, P. J., BRADY and DANIELS, JJ.

Judgment reversed, new trial ordered, costs to abide event.